**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4242-16T4

CHRISTINE SPIGAI and
CHRISTEN BORNSTAD,
her husband,

      Plaintiffs-Appellants,

v.

LIVE NATION WORLDWIDE, INC.,
NEW JERSEY TURNPIKE AUTHORITY/
GARDEN STATE PARKWAY,

      Defendants-Respondents,

and

PNC BANK ARTS CENTER,

      Defendant.

_____

Argued September 26, 2018 - Decided January 11, 2019

Before Judges Fuentes and Accurso.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-1199-15.

Anthony M. Prieto argued the cause for appellants (Law Offices of Robert Ricci, Jr., attorneys; Robert Ricci, Jr., on the brief).

Timothy K. Saia argued the cause for respondents (Morgan Melhuish Abrutyn, attorneys; Leonard C. Leicht, of counsel and on the brief).

PER CURIAM

Plaintiff Christine Spigai appeals from the entry of summary judgment dismissing her premises liability complaint against defendants New Jersey Turnpike Authority/Garden State Parkway and Live Nation Worldwide, Inc. for an accident occurring at defendant PNC Bank Arts Center. Because we agree summary judgment was properly granted to all defendants, we affirm.

The essential facts are undisputed. Spigai and friends had "lawn seats" for a concert at the Arts Center. The Arts Center is owned by the Turnpike Authority and operated by Live Nation. Parking in one of the commuter lots, Spigai and her friends took a courtesy shuttle bus to the venue. Rain, which had started early in the day, continued through the concert, culminating in thunder and lightning just before the show's end.

After the concert, Spigai and her friends made their way back to the buses. Spigai's friends boarded one of the buses back to their car. Spigai, however, got

separated from her companions.  Electing not to wait for the next bus, she walked with a crowd of people toward the lot where she left her car.

The commuter lot where Spigai parked is at the foot of a grassy hill.  A sidewalk along the top of the hill leads to a staircase down to the lot.  Spigai did not walk all the way to the staircase.  Instead, she followed some of the crowd down the wet, grassy slope.  Wearing flip-flops and carrying a chair, her tote bag and a tarp while talking to her husband on her cell phone, Spigai slipped on the wet grass and broke her leg.

Following discovery, defendants moved for summary judgment with the Turnpike Authority arguing it was immune from liability under the Tort Claims Act, N.J.S.A. 59:1-1 to 14-4, and Live Nation arguing it did not breach its duty of care to Spigai.  Spigai, relying on an expert report asserting defendants failed to adequately assess the risk of crime and accidents at the Arts Center, failed to have a surveillance plan or to continuously monitor security cameras in the parking lot, failed to provide physical barriers, ropes and stanchions to guide concertgoers and performed negligent crowd control, argued she had no reasonable alternative but to traverse the wet, grassy slope to get to her car.

Judge O'Brien granted summary judgment to all defendants. As to the Turnpike Authority, the judge found no reasonable juror could conclude the wet, grassy hill constituted a dangerous condition of public property. He noted

> [t]here was no physical defect in the property that could pose a substantial risk of injury. A grassy hill made wet from rain and natural conditions that plaintiff fell down while talking on her cell phone and having, and carrying items does not rise to the level of a dangerous condition. Indeed, plaintiff's expert offers no opinion whatsoever about the hill, meaning anything about its steepness or anything like that such that it would become dangerous.

The judge further found that even somehow assuming the property was in a dangerous condition, no "reasonable juror could find that the Turnpike Authority's conduct for permitting the existence of a natural hill on the land made wet from the weather to be palpably unreasonable." The judge concluded he was thus

> satisfied plaintiff has failed to properly aver that the dangerous condition existed on the public property creating a foreseeable risk of injury such that the Turnpike created it or had notice of and allowed it to exist, and allowing it to exist was therefore palpably unreasonable. Therefore, summary judgment to the Turnpike Authority must be granted.

As to Live Nation, the judge found Spigai

> failed to provide sufficient evidence the defendants failed to provide a reasonably safe place. A stairwell

4

was provided for patrons to access the parking lot where plaintiff was going and there is no evidence to show that people were actually prevented from using the stairs. While it may have taken a few minutes longer for plaintiff to wait for the next shuttle, or to walk over to the stairs where she reached the parking lot defendants provided adequate accommodations to concert goers to account for their safety.

Plaintiff on her own accord chose not to wait for the shuttle and to walk down the grassy hill as opposed to using the adjacent set of stairs to reach the parking lot. Even affording plaintiff all reasonable inferences, the Court assumes defendant was aware that patrons use this path on a regular basis. However, the fact that grass is slippery when wet is matter of common knowledge and it goes against a sense of basic fairness to impose a duty to warn that grass is slippery when wet.

Therefore the evidence is insufficient to permit a jury to conclude that the wet hill was a dangerous condition or that the defendant, Live Nation breached any duty to maintaining the area in a reasonably safe condition. Therefore, summary judgment must be granted.[1]

---

[1] The court found it did not need to reach defendants' argument that plaintiff's expert report was an inadmissible net opinion because the expert offered no opinion about the hill, other than it could have been cordoned off, and offered no basis for any duty to warn of or protect against slippery wet grass. Notwithstanding that finding, the order the court signed stated the expert would be barred from testifying at trial. The judge corrected the error on plaintiff's motion for reconsideration.

Spigai appeals, arguing the judge misapplied the summary judgment standard by refusing to submit the issue of the Turnpike's and Live Nation's liability to the jury and taking judicial notice of aspects of the configuration of the Arts Center property not in the record. We reject those arguments as without merit.

We review summary judgment using the same standard that governs the trial court.[2] Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012). Thus, we consider "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536 (1995)).

N.J.S.A. 59:4-2 addresses a dangerous condition of public property and provides as follows:

> A public entity is liable for injury caused by a condition of its property if the plaintiff establishes that the property was in dangerous condition at the time of

---

[2] Because we apply the same standard as the trial judge and review questions of law de novo without deference to interpretive conclusions we believe mistaken, see Nicholas v. Mynster, 213 N.J. 463, 478 (2013), Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995), we need not address plaintiff's argument that the trial judge misapplied the summary judgment standard.

6

the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.

Thus "to impose liability on a public entity pursuant to that section, a plaintiff must establish the existence of a 'dangerous condition,' that the condition proximately caused the injury, that it 'created a reasonably foreseeable risk of the kind of injury which was incurred,' that either the dangerous condition was caused by a negligent employee or the entity knew about the condition, and that the entity's conduct was 'palpably unreasonable.'" Vincitore v. N.J. Sports & Exposition Auth., 169 N.J. 119, 125 (2001).

Applying that standard here, we agree with the trial judge that no reasonable juror could find the grassy slope, even wet with rain, to constitute a

7

"dangerous condition," that is, "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." N.J.S.A. 59:4-1(a). We further agree the obvious nature of the wet grass on the hill made it impossible for plaintiff to recover against Live Nation, a defendant without statutory immunities. See Model Jury Charges (Civil), 5.20F, "Duty Owed-Condition of Premises" (rev. Mar. 2017) ("Whether defendant has furnished an invitee with a reasonably safe place for his/her use may depend upon the obviousness of the condition claimed to be hazardous and the likelihood that the invitee would realize the hazard and protect himself/herself against it."). Live Nation's duty of care did not extend to warning plaintiff that grass is slippery when wet or to taking steps to prevent her from walking down the hill to her car in the rain instead of using the staircase provided.

We affirm the grant of summary judgment dismissing plaintiff's complaint, substantially for the reasons expressed by Judge O'Brien in his careful and comprehensive opinion from the bench on March 31, 2017.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4242-16T4